IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARRAN M. HAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10CV423 |
| ) | 1:10CV425 |
| GGP-FOUR SEASONS, L.L.C., GENERAL ) | |
| GROWTH PROPERTIES, INC., MYDATT ) | |
| SERVICES, INC. d/b/a VALOR ) | |
| SECURITY SERVICES, and THE GAP, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on Plaintiff's Motion to Modify Scheduling Order (Docket Entry 22).[1] For the reasons that follow, the Court will grant said Motion in part and deny it in part.

BACKGROUND

On October 13, 2009, Plaintiff instituted this action in state court, seeking damages from Defendants for injuries Plaintiff suffered when a third-party shot Plaintiff at a shopping mall in Greensboro, North Carolina. (Docket Entry 4.) After Plaintiff twice amended his Complaint (including to eliminate the only non-diverse defendant), Defendants removed the case to this Court on June 1, 2010. (Docket Entries 1-3, 6, 7.) On September 20, 2010, this Court adopted a Scheduling Order consistent with the parties'

---

[1] Although only one "case or controversy" exists between these parties, the Clerk assigned two case numbers because of the particular circumstances surrounding the removal of the instant case from state court to this Court (see Docket Entry 13 at 1 (consolidating 1:10CV423 and 1:10CV425)); accordingly, all parenthetical citations refer to the docket in 1:10CV423.

Joint Rule 26(f) Report. (Docket Entries 12, 13.) That Scheduling Order set: 1) February 21, 2011, as the deadline for Plaintiff to disclose his expert reports; 2) March 21, 2011, as the deadline for Defendants to disclose their expert reports; and 3) June 21, 2011, as the deadline for completing discovery. (Docket Entry 13 at 1.)

On February 21, 2011, Plaintiff filed the instant Motion seeking modification of the Scheduling Order to relax the deadline for Plaintiff to disclose three expert reports. (Docket Entry 22.) Three days later, Plaintiff filed a supporting brief. (Docket Entry 25.) Defendants timely responded in opposition. (Docket Entry 29.) Plaintiff did not file a reply brief. (See Docket Entries dated Mar. 17, 2011, to present.)

DISCUSSION

Standard for Amending a Scheduling Order

The Federal Rules of Civil Procedure (the "Rules") require the issuance of a scheduling order early in each case. See Fed. R. Civ. P. 16(b)(2). This requirement came into the Rules as part of "[t]he Supreme Court['s] extensive[] amend[ment] [of] [Rule] 16 in 1983." Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (Gordon, S.J.). "The drafters of the Rules intended [the scheduling] order to control the subsequent course of action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process." Id. at 84-85 (internal quotation marks omitted). See also Fed. R. Civ. P. 16 advisory committee's note,

1983 Amendment, Discussion, Subdivision (b) (explaining that scheduling order deals with "problem of procrastination and delay by attorneys in . . . discovery").

"[T]he scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Forstmann, 114 F.R.D. at 85 (internal quotation marks omitted). To the contrary, it represents "the critical path chosen by the [court] and the parties to fulfill the mandate of Rule 1 in securing the just, speedy, and inexpensive determination of every action." Marcum v. Zimmer, 163 F.R.D. 250, 253 (S.D.W. Va. 1995) (internal brackets and quotation marks omitted). Accordingly, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "[T]he touchstone of 'good cause' under Rule 16(b) is diligence." Marcum, 163 F.R.D. at 255. See also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." (emphasis added)).[2]

---

[2] Prior to the 1983 amendment of Rule 16 that mandated entry of scheduling orders, courts had experimented with the use of scheduling orders. See Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b). In Barwick v. Celotex Corp., 736 F.2d 946 (4th Cir. 1984), the United States Court of Appeals for the Fourth Circuit confronted an appeal related to a scheduling order entered by a district court prior to the adoption of the 1983 Amendment to Rule 16. In affirming the district court's enforcement of the scheduling order in that case, the Fourth Circuit stated: "The requirements of the pretrial order are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice." Id. at 954 (emphasis added). The existing Rule 16(b) permits modification of scheduling
(continued...)

-3-

Analysis of the Proposed Scheduling Order Amendment

In his instant Motion, Plaintiff asked "the Court to Modify the Schedul[ing Order] such that the expert witnesses to be used in this matter have sufficient enough time to develop and render their respective opinions . . . ." (Docket Entry 22 at 2.) As support for that request, Plaintiff's instant Motion states as follows:

> 3. Due to the catastrophic nature of Plaintiff's injuries and his ongoing treatment, each of his medical experts will need additional time with which to render any meaningful opinions at this point.
>
> 4. Furthermore, Plaintiff's security experts are still in the process of reviewing data regarding the incident and circumstances that Plaintiff alleges are the causes of his injuries.
>
> 5. Allowing Plaintiff's motion will not unfairly prejudice the defendants in such a way that a continuance cannot cure.
>
> 6. Disallowing the motion will not only prohibit Plaintiff from gathering evidence necessary to prove his case, but also serve to eliminate virtually any compensable damages that Plaintiffs

---

²(...continued)
orders "only for good cause," Fed. R. Civ. P. 16(b)(4) (emphasis added), and thus does not authorize alteration of scheduling order deadlines based upon a showing of "extraordinary circumstances" or "in the interest of justice," as Barwick did in connection with scheduling orders entered prior to the 1983 Amendment to Rule 16. It does not appear that the Fourth Circuit has repeated the relevant Barwick language in a published opinion construing a scheduling order adopted pursuant to the post-1983 Amendment version of Rule 16. The Fourth Circuit, however, has quoted that excerpt from Barwick in a few unpublished decisions, including, most recently, Wall v. Fruehauf Trailer Servs., Inc., 123 Fed. Appx. 572, 576 (4th Cir. 2005), but without addressing the intervening amendment of Rule 16. Plaintiff has not relied on Barwick (or its unpublished Fourth Circuit progeny) and, if he had, the Court would hold that the Barwick standard did not survive the 1983 Amendment to Rule 16. See Halpern v. Wake Forest Univ. Health Sciences, 268 F.R.D. 264, 273-74 (M.D.N.C. 2010) (quoting Nourisan Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008), for proposition that, "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied"), aff'd, No. 1:09CV474 (M.D.N.C. Sept. 20, 2010) (Tilley, S.J.) (unpublished), appeal docketed, No. 10-2162 (4th Cir. Oct. 15, 2010).

> [sic] may seek under the law, thus, causing a
> manifest injustice.

(Id. at 1-2.)

Plaintiff's brief elaborated on the nature of the three expert reports at issue and the circumstances delaying their disclosure:

> [In the time period that followed the filing of this case], Plaintiff was still undergoing treatment for his injuries. <u>Around the same time this matter was removed to Federal Court, Plaintiff underwent surgery due to complications he was experiencing from his previous surgeries. Additionally, since that time Plaintiff has been hospitalized on numerous occasions and he has been admitted to several different therapy facilities.</u> Plaintiff's counsel has hired expert witnesses in this matter to assess the lifetime loss of vocational ability and the economic effects that Plaintiff has and will experience from this incident. However, those experts have not been able to completely form their opinion because of the massive amount of treatment Plaintiff has received. <u>There are thousands of medical records and more being sent to Plaintiff's counsel daily for these experts to review. Dr. Cynthia Wilhelm is currently still in the process of reviewing Plaintiff's medical records. Once Dr. Wilhelm completes evaluation and makes her opinion, Dr. William Y. Davis will then be able to make his opinion as to the economic affects [sic] that Plaintiff will have to endure due to his injuries.</u>
>
> <u>Additionally, Plaintiff's counsel has retained a security expert.</u> This expert is expected to form an opinion as to whether Four Seasons Town Center had adequate security on the date in question. However, the expert, <u>John Harris</u>, is unable to form his opinion until all discovery is gathered. In particular, <u>Mr. Harris is waiting on the transcript of the deposition of Robert Booker, who was the Public Safety Director of Valor Security [at the time of Plaintiff's shooting]. Plaintiff's counsel has been trying to schedule this deposition since December of 2010. A time and date agreeable to all parties was just determined on February 23, 2011.</u> Mr. Booker's deposition is to take place on February 28, 2011. <u>Mr. Harris would also like to do a site visit of the property where the incident occurred. This visit was scheduled on February 22, 2011</u> by all parties to take place on March 31, 2011.

(Docket Entry 25 at 2 (emphasis added).)

Defendants contend that Plaintiff has not shown "good cause" for his requested modification of the Scheduling Order. (Docket Entry 29 at 5.) In this regard, Defendants assert that:

1) "the bulk of written discovery in this case was actually conducted prior to the removal of this action to this Court" (id. at 6);

2) "Defendants received responses to their written discovery requests to the Plaintiff between April 2010 and June 2010, which included voluminous medical records and bills relating to the Plaintiff and his medical condition, treatment, and prognosis . . . [and] [t]he last supplemental discovery response by Plaintiffs [sic] that provided medical records or bills was in July 2010" (id. at 8);

3) although Defendants have "conduct[ed] depositions of Plaintiff and his family members[,] . . . Plaintiff did not conduct any depositions until February 28, 2011, when the deposition of Robert Booker, the former Public Safety Director of Valor Security, was taken – seven days after Plaintiff's deadline to serve expert reports" (id. at 5-6);

4) "Mr. Booker was identified by Defendant Valor Security Services, Inc. in its responses to the Plaintiff's First Set of Interrogatories almost a year ago, on April 30, 2010, before this case was removed to this Court . . . [but] Plaintiff does not explain why no effort was made to depose Mr. Booker until [December 2010], particularly with Plaintiff's expert reports due February 21, 2011" (id. at 6); and

-6-

5) Plaintiff has given "no explanation . . . regarding the reason for the delay in coordinating [the] site visit [by Mr. Harris] . . . [and] Defendants are aware of no efforts made by . . . Plaintiff to schedule such a site visit prior to January 2011 . . . [although] Mr. Harris had been retained as a security expert by Plaintiff as early as June 2010" (id. at 7).

Under these circumstances, the Court finds that "good cause" exists for an extension of Plaintiff's deadline to submit the expert reports of Drs. Wilhelm and Davis. In reaching this determination, the Court credits the representations of Plaintiff's counsel that:

1) "[t]here are thousands of medical records and more being sent to Plaintiff's counsel daily for [Drs. Wilhelm and Davis] to review," including as a result of additional medical treatment rendered since entry of the Scheduling Order (Docket Entry 25 at 2 (emphasis added));[3]

---

[3] Defendants impliedly have questioned this representation based on the fact that: 1) prior to April 2010, Defendants requested discovery from Plaintiff as to his medical records and bills (Docket Entry 29 at 8); and 2) "[t]he last supplemental discovery response by Plaintiffs [sic] that provided medical records or bills was in July 2010" (id.). In other words, Defendants reasonably discern significant conflict between Plaintiff's representation – on the one hand – that "[t]here are thousands of medical records and more being sent to Plaintiff's counsel daily for [Drs. Wilhelm and Davis] to review" (Docket Entry 25 at 2 (emphasis added)) and Plaintiff's conduct – on the other hand – in failing to supplement his discovery responses to Defendants to provide such documents since July 2010. Based on this conflict, it would appear that either Plaintiff has not been receiving, on an ongoing basis since July 2010, "daily" deliveries of medically-related records (amounting to "thousands" of such documents) or Plaintiff has failed to provide such materials to Defendants. For purposes of resolving the instant Motion, the Court accepts Plaintiff's counsel's representation that, since entry of the Scheduling Order, Plaintiff has come into possession of substantial quantities of records necessary for the completion of
(continued...)

-7-

2) Dr. Wilhelm "is currently still in the process of reviewing Plaintiff's medical records" (id.); and

3) "Once Dr. Wilhelm completes evaluation and makes her opinion, [Dr. Davis] will then be able to make his opinion as to the economic affects [sic] that Plaintiff will have to endure due to his injuries" (id.).

These representations together support a finding that Plaintiff acted with reasonable diligence in attempting to gather materials necessary for Dr. Wilhelm to complete her report regarding Plaintiff's injuries (without which Dr. Davis cannot complete his report on economic damages), but that the volume and continuing generation of medically-related documentation prevented completion of Dr. Wilhelm's report (and thus Dr. Davis's report) within the time-frame set by the Scheduling Order. In light of this finding and because "the touchstone of 'good cause' under Rule 16(b) is diligence," Marcum, 163 F.R.D. at 255, the Court will grant Plaintiff's request for an extension of the deadline for submission of Dr. Wilhelm's and Dr. Davis's expert reports.

Conversely, the Court finds a lack of "good cause" to extend the deadline for Plaintiff to submit an expert report from Mr.

---

³(...continued)
the expert report by Dr. Wilhelm (which report Dr. Davis requires to make the economic calculations for his expert report). As a result, the Court expects that Plaintiff promptly will provide supplemental discovery responses to Defendants to account for such records, see Fed. R. Civ. P. 26(e)(1)(A), or will make preparations to explain why he has not made any such supplementation. If Plaintiff fails to provide such prompt supplementation or if the supplemental materials Plaintiff tenders to Defendants do not support the representations made by Plaintiff in connection with the instant Motion (on which the Court relied in extending the deadline for disclosure of the expert reports of Drs. Wilhelm and Davis), Defendants may seek appropriate relief from the Court.

Harris.  In this regard, the Court agrees with Defendants' above-quoted position that Plaintiff has failed to explain why he waited:

1) until December 2010 to attempt to schedule a deposition of Mr. Booker (whose testimony Mr. Harris allegedly required to render an expert opinion), given that Defendants had identified Mr. Booker as a witness with obvious relevance to the assessment of security issues in April 2010 and that Plaintiff had retained Mr. Harris as a security expert by June 2010; and

2) until January 2011 to attempt to schedule a site visit for Mr. Harris, despite the fact that Plaintiff had retained Mr. Harris no later than June 2010.

In the absence of any such explanations, the Court cannot find that, as to the gathering of information necessary to the formation of Mr. Harris's expert opinion, Plaintiff acted with sufficient diligence to satisfy the "good cause" standard under Rule 16(b)(4). See Marcum, 163 F.R.D. at 255; Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b).[4]  As

---

[4] To the extent Plaintiff relies on the alleged absence of prejudice to Defendants from an extension of his deadline to disclose Mr. Harris's report (see Docket Entry 25 at 5), the Court notes that a lack of prejudice to one's opponent does not establish "good cause" to alter scheduling order deadlines. See, e.g., Cole v. Principi, No. 1:02CV790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004) (Beaty, J.) (unpublished); Dewitt v. Hutchins, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) (Dixon, M.J.); 3 James Wm. Moore et al., Moore's Fed. Prac. - Civil § 16.14[b] (3d. ed. 2009).  Further, Plaintiff's lack of prejudice argument turns entirely on his view that "potential prejudice could easily be cured by a continuance of the trial date."  (Docket Entry 25 at 5.)  This position ignores the fact that even Geiserman v. MacDonald, 893 F.2d 787 (5th Cir. 1990) – the only case cited by Plaintiff in support of his instant Motion (see Docket Entry 25) – recognized that delays that result from insufficient attorney diligence constitute "a particularly abhorrent feature of today's trial practice.  They increase the cost of litigation, to the detriment of the parties enmeshed in it;
(continued...)

a result, the Court will deny Plaintiff's request for an extension of the expert report deadline as to Mr. Harris.

## CONCLUSION

The Court finds good cause to amend the Scheduling Order to extend the time for Plaintiff to disclose his expert reports from Drs. Wilhelm and Davis, but not his expert report from Mr. Harris.[5]

---

[4](...continued)
they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution." Geiserman, 893 F.2d at 792. As a result, the Geiserman Court held as follows: "Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here." Id. In light of the same concerns identified in Geiserman, "the judges of this Court consistently enforce case management deadlines to ensure that trials take place as scheduled." Halpern v. Wake Forest Univ. Health Sciences, 268 F.R.D. 264, 274 (M.D.N.C. 2010). The Court also declines Plaintiff's invitation to focus not on the diligence of the movant, but rather on the importance to the movant of the material affected by the requested extension (see Docket Entry 25 at 4-5). Again, the only case on which Plaintiff relied in this regard undermines his position. See Geiserman, 893 F.2d at 792 ("[The plaintiff] has not provided a valid reason that would justify excusing him from the deadlines imposed by the lower court. The claimed importance of expert testimony underscores the need for [the plaintiff] to have timely designated his expert witness so that [the defendant] could prepare for trial. The inportance [sic] of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." (internal footnote omitted)).

[5] In reaching this decision, the Court has attempted to construe "good cause" and its underlying requirement of reasonable diligence by the movant in a fashion that balances competing concerns. On one side of the scale, Rule 16(b)(4)'s "good cause" standard must have sufficient content to deter litigants from treating a scheduling order as "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," Forstmann, 114 F.R.D. at 85. On the other side, adoption of an unnecessarily rigorous notion of "good cause" may motivate litigants to seek unduly distant deadlines at the inception of a case. See Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("Since the scheduling order is entered early in the litigation, th[e] [good cause] standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery."). Although focusing on the diligence of the movant generally achieves the appropriate balance, the Court notes that – diligence aside - Plaintiff "took a serious risk
(continued...)

Neither Plaintiff's instant Motion nor his supporting brief proposes a new deadline for submission of the expert reports from Drs. Wilhelm and Davis. (See Docket Entries 22, 25.) Further, both Plaintiff and Defendants agree that any such extension of time will require adjustment of other deadlines, but again they have not made concrete proposals about the proper new dates. (See Docket Entry 25 at 5; Docket Entry 29 at 10.) Accordingly, the Court will direct the parties to consult about new case management deadlines in light of the Court's instant ruling and to submit a joint status report setting out their proposal (or, in the absence of mutual agreement, their respective views) regarding appropriate dates.[6]

---

[5](...continued)
by waiting until the day [of the relevant deadline] to file a motion for an extension," Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1:03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (Dixon, M.J.) (unpublished). Plaintiff obviously knew well before February 21, 2011, that he would not serve Defendants with the expert reports within the time the Scheduling Order required, but failed to address the situation promptly; such an approach undermines the efficient conduct of litigation (see Docket Entry 29 at 9 (describing how timing of Plaintiff's requested extension negatively affected Defendants)). The Court may factor such considerations into its analysis of the propriety of any future requested extension. See generally Andretti v. Borla Performance Indus., Inc., 426 F.3d 824, 830 (6th Cir. 2005) ("The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements. A district court should also consider possible prejudice to the party opposing the modification." (internal citation and quotation marks omitted)); Smith v. United Steel Workers of Am., Civil Action No. 2:04-0499, 2007 WL 2477345, at *1 (S.D.W. Va. Aug. 29, 2007) (unpublished) (quoting with approval statement in Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), that "existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion [to relax a scheduling order deadline]").

[6] All counsel should use this opportunity to improve their level of communication with each other. As Defendants' response brief notes, Plaintiff's instant Motion "does not comply with [this Court's] Local Rule 6.1 in that it fails to 'show prior consultation with opposing counsel and the view of opposing counsel.'" (Docket Entry 29 at 3 (quoting M.D.N.C. R. 6.1(a)).) At least one of the Defendants also has filed extension requests that did not satisfy this
(continued...)

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Modify Scheduling Order (Docket Entry 22) is **GRANTED IN PART AND DENIED IN PART** in that the Court will extend the deadline for Plaintiff to disclose the expert reports from Drs. Wilhelm and Davis, but will not extend the deadline for Plaintiff to disclose the expert report from Mr. Harris. On or before April 25, 2011, the parties shall file with the Court a joint status report setting out either their joint position on appropriate new case-management deadlines in light of the Court's instant ruling or (if they cannot agree about such deadlines) their respective positions on such matters.

                                            /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                     **United States Magistrate Judge**

April 18, 2011

---

[6](...continued)
requirement. (See Docket Entries 17, 27, 30.) Both the Rules and this Court's Local Rules mandate that opposing counsel work cooperatively together to conduct discovery efficiently and responsibly, see Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 242 (M.D.N.C. 2010); without adequate communication, counsel cannot carry out this obligation.